UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x
WILLIAM KING MOSS, III,

                    Plaintiff,                MEMORANDUM & ORDER
                                              23-CV-6571(JS)(SIL)

     -against-

BOARD OF EDUCATION OF THE BRENTWOOD
SCHOOL DISTRICT; BRENTWOOD UNION FREE
SCHOOL DISTRICT; AND INDIVIDUALLY AND
IN THEIR OFFICIAL CAPACITIES: RICHARD
LOESCHNER, ANN PALMER, AND ROSAMARIA
CORTESE,

                    Defendants.
---------------------------------x
For Plaintiff:     William King Moss, III, pro se
                   32 South 5th Avenue
                   Brentwood, New York 11717

For Defendants:    Carolyn Beth Lineen, Esq.
                   Silverman & Associates
                   445 Hamilton Avenue, Suite 1102
                   White Plains, New York 10601

SEYBERT, District Judge:

          Pro se plaintiff William King Moss III, ("Mr. Moss," or
"Plaintiff") commenced this action against defendants Board of
Education of the Brentwood School District ("Board of Ed.");
Brentwood Union Free School District (the "District"); and the
following defendants in their individual and official capacity:
Richard Loeschner, as Superintendent of the District
("Superintendent Loeschner"); Ann Palmer, as Assistant
Superintendent of the District ("Assistant Superintendent
Palmer"); and Rosamaria Cortese ("Ms. Cortese"), as the newly

1

appointed Principal of Gail E. Kirkham Northeast Elementary School ("Northeast Elementary"), (collectively, the "Defendants").[1]

Plaintiff purports to allege discrimination claims based on Plaintiff's race in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981 ("Section 1981"); 42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C. § 1985 ("Section 1985"); New York State Human Rights Law, ("NYSHRL"), N.Y. Exec. Law § 290 et seq.;[2] and New York Civil Rights Law § 40 et seq. ("Civil Rights Law"). (Compl., ECF No. 1.)

This is Plaintiff's most recent action against the District, his having brought several previous judicial and administrative actions against the District. See, e.g., Moss, III v. Bd. of Educ. of the Brentwood U.F.S.D., No. 19-CV-2195 (E.D.N.Y. 2021); Moss v. Brentwood Union Free Sch. Dist., No. 21-CV-4372 (E.D.N.Y. 2021); Moss III v. Ciferri, No. 21-CV-3572 (E.D.N.Y.

---

[1] The Court notes that, though listed on the docket as a defendant, Kathy Hoey is not included as a defendant in the case caption; nor has Plaintiff asserted any claims against Kathy Hoey in his Complaint. (See Case Docket; see also generally Compl.) Accordingly, Kathy Hoey is dismissed from this case; the Clerk of Court is DIRECTED to terminate Kathy Hoey from this action.

[2] Plaintiff also asserts retaliation claims under the NYSHRL.

2021); <u>Moss v. Bd. of Educ. of Brentwood Union Free Sch. Dist.</u>, No. 21-CV-5866 (E.D.N.Y. 2021).[3]

Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint (hereafter, the "Dismissal Motion"). (<u>See</u> ECF No. 14; <u>see also</u> Support Memo, ECF No. 17; Lineen Decl. in Support, ECF No. 16; Reply, ECF No. 20.) Plaintiff opposes said Motion (hereafter, the "Opposition"). (<u>See</u> Opp'n, ECF No. 19; <u>see also</u> Opp'n Aff., ECF No. 18.)[4] After careful consideration, for the reasons stated herein, the Court GRANTS Defendants' Dismissal Motion as to Plaintiff's federal claims. The Court further declines to exercise supplemental jurisdiction over Plaintiff's state law claims; therefore, Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE.

[Proceed to next page.]

---

[3] Additionally, throughout this Order, the Court refers to its Memorandum and Order in a factually similar case brought by Plaintiff against another school district, the Sachem Central School District (hereafter, the "<u>Sachem</u> Case"). <u>See</u> <u>Moss v. Bd. of Educ. of Sachem Cent. Sch. Dist.</u>, No. 22-CV-6212, 2024 WL 3328637 (E.D.N.Y. July 8, 2024) (hereafter, the "<u>Sachem Decision</u>"), <u>aff'd</u>, No. 24-2096, 2025 WL 946417 (2d Cir. March 28, 2025) (summary order). The <u>Sachem Decision</u> is found in the <u>Sachem</u> Case docket at ECF No. 42.

[4] Page citations to both Plaintiff's and Defendants' submissions are those generated by the Court's Electronic Case Filing ("ECF") system.

<u>BACKGROUND</u>

I.   <u>Factual Background</u>[5]

        Plaintiff, a black African American male and resident of
Brentwood, New York, worked as a middle school and high school
math teacher at the District from September 2000 through August
2011.  (Compl. ¶ 9; Pl's Resume, Ex. J, ECF No. 1-2, at 108.)
Superintendent Loeschner is the former Superintendent of the
District.   (Compl. ¶ 15; Support Memo at 10.)   Assistant
Superintendent Palmer is the Assistant Superintendent for
Elementary Education for the District. (Compl.¶ 16.)  Ms. Cortese
was appointed Principal of Northeast Elementary, effective
September 2020.  (<u>Id.</u> ¶ 17.)

---

[5]   The following facts are taken from the Complaint and, for
purposes of considering Defendants' Dismissal Motion, are accepted
as true.  <u>See</u> <u>Williams v. Richardson</u>, 425 F. Supp. 3d 190, 200
(S.D.N.Y. 2019).   Notwithstanding, the Court is not "bound to
accept conclusory allegations or legal conclusions masquerading as
factual conclusions."  <u>Faber v. Metro. Life Ins. Co.</u>, 648 F.3d 98,
104 (2d Cir. 2011).  Generally, "[w]hen considering a motion to
dismiss, the Court's review is confined to the pleadings
themselves," because "[t]o go beyond the allegations in the
[c]omplaint would convert the Rule 12(b)(6) motion into one for
summary judgment pursuant to [Rule] 56." <u>Thomas v. Westchester
County Health Care Corp.</u>, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).
"Nevertheless, the Court's consideration of documents attached to,
or incorporated by reference in the [c]omplaint, and matters of
which judicial notice may be taken, would not convert the motion
to dismiss into one for summary judgment."  <u>Id.</u>; <u>see also</u> <u>Hu v.
City of N.Y.</u>, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule
12(b)(6) motion, the court may consider 'only the facts alleged in
the pleadings, documents attached as exhibits or incorporated by
reference in the pleadings, and matters of which judicial notice
may be taken.'" (quoting <u>Saimels v. Air Transp. Local 504</u>, 992
F.2d 12, 15 (2d Cir. 1993); alteration omitted)).

Plaintiff alleges that, on November 21, 2019, Superintendent Loeschner publicly called Plaintiff "arrogant" during a scheduled public meeting of the Board of Ed. (Id. ¶¶ 36, 117.)

A.    The District's Job Posting

In July 2020, on an on-line application system ("OLAS"), the District posted available positions for two elementary school Principals in the District (hereafter, the "Job Posting"). (Id. ¶ 54.)  One of the Principal positions was for Northeast Elementary, and the other was for Pine Park Elementary School ("Pine Park Elementary"). (See Defs.' Feb. 12, 2021 Ans. & Resp. to Pl.'s N.Y.S. Div. of Human Rights Compl., Ex. D,[6] ECF No. 1-2, at 64, attached to Compl.)  The Job Posting included the following "minimum requirements:" "Must hold New York State SAS/SBL Certification" and "[a] minimum of five (5) years of successful teaching experience." (Compl. ¶ 57; Job Posting, Ex. H, ECF No. 1-2, at 104, attached to Compl.)  The Job Posting further provided, "Diverse and Bilingual candidates are encouraged to apply." (Compl. ¶ 57; Job Posting.)

The District received applications from existing District employees; it was contractually required to offer those

---

[6]  Hereafter, Plaintiff's Exhibit D shall be referred to and cited as the "NYSDHR Response".  For clarity, the entire NYSDHR Response is found in the Case Docket at ECF No. 1-2, pp.61-73.

employees interviews. (See Compl.; see also Recruiting and Hiring Employees (hereafter, "Policy 9240") Ex. L, ECF No. 1-2 at 41, attached to Compl.) Policy 9240 provides a "preference" for District residents where "candidates' skills, experience, and criteria used in the selection process are equivalent." (Id.) Policy 9240 also provides the District "shall seek the most qualified candidates for vacant positions by recruiting from a variety of sources, including present staff." (Id. at 40.)

On July 15, 2020, on OLAS, Plaintiff timely applied for the Elementary Principal positions. (Compl. ¶ 60.) Plaintiff's submission stated his certifications included: "Bilingual Education Extension"; "Mathematics Ext 5-6"; "School Business Administrator"; "Sch. District Administrator"; "Mathematics 7-12"; and "School Administrator/Supervisor". (Id. ¶ 63.) His application also indicated he had administrative experience at the middle school and high school level. (Id. ¶ 62.) However, neither Plaintiff's Resume nor his cover letter indicated he had any experience as a Principal or Assistant Principal. (See Pl.'s Resume; Pl.'s Cover Letter, Ex. I, ECF No. 1-2 at 106, attached to Compl.)

B.    Candidate Interviews

The Human Resources Department had the initial responsibility of vetting applicants for the positions. (Assistant Superintendent Palmer Aff. ("Palmer Aff."), Ex. L, ECF

6

No. 1-2, at 114-19, at ¶¶ 4-5 <u>attached to</u> Compl.)  Five existing District employees (the so-called "internal candidates"), including Ms. Cortese, were scheduled to be interviewed on August 3, 2020.  (<u>Id.</u> at ¶ 6.)  Assistant Superintendent Palmer selected six non-District candidates (the so-called "external candidates") from the vetted applicants to be interviewed on August 4, 2020, <u>to wit</u>: Fredrika Miller ("Miller"); Ashish Kapadia; James Cameron ("Cameron"); Tracy Adams ("Adams"); Veronique Bailey ("Bailey"); and Cheryl Witiing ("Witiing").  (<u>Id.</u>)  Adams, Bailey, and Miller are African American.  (<u>See</u> Compl. ¶¶ 70, 72; Palmer Aff., at ¶ 6.)

On or about July 31, 2020, the Board of Ed. inquired of Superintendent Loeschner whether Plaintiff and another community member applicant, Ana Martinez ("Ms. Martinez") were scheduled to be interviewed for the Principal positions.  (Loeschner Aff., Ex. M, ECF No. 1-2, at 122-27, ¶ 6, <u>attached to</u> Compl.)  Thereafter, on August 3, 2020, Superintendent Loeschner advised Assistant Superintendent Palmer to add Plaintiff and Ms. Martinez to the District's interview list of external candidates.  (Palmer Aff. at ¶ 9.)  To accommodate this request, Assistant Superintendent Palmer instructed Human Resources to cancel the previously scheduled interviews of external candidates Adams and Bailey for August 4, 2020.  (<u>Id.</u> at ¶¶ 10-11.)  Independently, candidate Whiting cancelled her interview with the District.  (<u>Id.</u>)

On August 3, 2020, the District contacted Plaintiff for an interview on August 4, 2020. (Compl. ¶ 66.) Also on August 3, 2020, the five internal candidates, including Ms. Cortese and Ms. Nieves, and one external candidate, Sonia Hood, an African American, were interviewed. (Palmer Aff. at p.116.). Five external candidates were interviewed on August 4, 2020, including Plaintiff and another African American candidate, Miller. (Id. at p.117.)

The first-round interview committee consisted of: Assistant Superintendent Palmer; President of the Brentwood Teachers Association, Kevin Coyne; President of the Brentwood Principals and Supervisors Organization, Berge Escobores; Assistant Superintendent for Bilingual Programs K-12, Wanda Ortiz-Rivera ("Ortiz-Rivera"); former Director of Special Services, Kimberly Fauci; and community members Elizabeth Cordero and Tommie Brown. (See Palmer Aff. at p.116.) According to Defendants' NYSDHR Response, the candidates were rated on a 1-to-5 scale, with "1" being a "poor" rating, and "5" being an "excellent" rating. (NYSDHR Response at 65.) In each of the 35 qualities assessed, Ms. Cortese received a unanimous "5" rating by the interviewers. (Id.) In comparison, Plaintiff received a "5" rating in seven of the 35 qualities assessed, as well as a "3" rating in eight others. (Id. at 66.)

8

By interview committee consensus, internal candidates Ms. Cortese, Ms. Nieves, Karen Kregel ("Kregel"), and Ms. Martinez, as well as external candidate Cameron, an elementary school Principal, were advanced to the second level of interviews. (Id.) Plaintiff was not included in the advancement. (See id.) The second-round interview committee included: Superintendent Loeschner; Assistant Superintendent Palmer; the Assistant Superintendent for Secondary Education, Programs, and Policy; and Ortiz-Rivera. (Id.) Following the second-round interviews, four candidates were presented to the Board of Ed. for the two Principal positions, including Ms. Cortese, Ms. Nieves, Kregel, and Ms. Martinez. (Id.) Ultimately, Superintendent Loeschner recommended Ms. Cortese be appointed Principal of Northeast Elementary and Ms. Nieves be appointed Principal of Pine Park Elementary. (Id. at 66-67.) Both recommendations were unanimously approved by the Board of Ed. on October 2, 2020. (Id. at 67.) Prior to that, on August 26, 2020, Plaintiff had been notified he was not selected for either Principal position. (Aug. 26, 2020 Ltr. to Pl., Defs. Ex. 2, ECF No. 16-3.)

C.  Credentials of Appointed Principals

1.  Ms. Cortese

Employed by the District since 1998, Ms. Cortese:  had been the Assistant Principal of the District's Northeast Elementary for ten years; and was a school psychologist at another

elementary school within the District for two years. (Cortese Resume, Ex. M, ECF No. 1-2, at pp.76-77, attached to Compl.) Plaintiff alleges Ms. Cortese had no experience teaching public school elementary students and was not Bilingual Education certified. (Compl. ¶¶ 75, 115.) Ms. Cortese holds two Master's Degree and is a certified School District Administrator ("SDA"), but is not SAS or School Building Leader ("SBL") certified. (Id. ¶ 114; NYSDHR Response at 65.)

        2.  Ms. Nieves

Employed by the District since 2015, prior to her appointment as Principal, Ms. Nieves had been an Assistant Principal of another District elementary school and a middle school. (NYSDHR Response at 65-66.) Before that, Ms. Nieves worked for 14 years in other school districts at the elementary level, including four years as an English as Second Language ("ESL")/Bilingual teacher. (Id.) She holds two Master's Degrees and is certified as a SDL, SBL, and teacher of ESL. (Id.)

## II. Procedural Background

        A.  The State Proceedings

On September 8, 2020, Plaintiff served a written demand for an investigation of the hiring for the two Elementary Principal positions. (Sept. 8, 2020 Demand Notice, Defs. Ex. 3, ECF No. 16-4.) The District appointed Special Counsel to investigate the allegations, which were found to be unsubstantiated. (NYSDHR

Response at 62.)  On or about October 2, 2020, Plaintiff appealed the Special Counsel's decision to the Commissioner of the New York State Department of Education (the "Commissioner") challenging the hiring for the Elementary Principal positions.  (See Pl.'s Petition, Defs. Ex. 4, ECF No. 16-5.)  Specifically, Plaintiff claimed the District violated his civil rights by denying him an equal opportunity to the Principal positions.  (Id.)  On March 8, 2022, finding Plaintiff failed to "demonstrate any wrongdoing in connection with the recruitment and appointment of Ms. Cortese and Ms. Nieves", the Commissioner dismissed Plaintiff's appeal. (Comm'r Mar. 8, 2022 Decision, Defs. Ex. 5, ECF No. 16-6.)

Thereafter, on November 29, 2020, Plaintiff filed a complaint with the NYSDHR alleging race discrimination and retaliation in the hiring process for the Elementary Principal positions (hereafter, the "NYSDHR Proceeding"), which was dually filed with the Equal Employment Opportunity Commission ("EEOC"). (See NYSDHR Compl., Ex. C, ECF No. 1-1, attached to Compl.)  On February 12, 2021, the District submitted its NYSDHR Response. (See NYSDHR Response.)  On June 30, 2020, the NYSDHR dismissed Plaintiff's Complaint finding no probable cause, thereby concluding the NYSDHR Proceeding.  (See NYSDHR Determination and Order, Defs. Ex. 7, ECF No. 16-8.)  On November 22, 2021, the EEOC issued Plaintiff a dismissal and right-to-sue letter.  (EEOC Dismissal and Right-to-Sue Ltr., Defs. Ex. 8, ECF No. 16-9.)  On

11

November 30, 2020, the Plaintiff served a Notice of Claim on the District asserting potential claims arising out of the District's hiring for the Elementary Principal positions.  (Notice of Claim, Defs. Ex. 6, ECF No. 16-7.)

      B.   <u>The Instant Federal Litigation</u>

Plaintiff commenced the instant action on September 1, 2023, asserting race-based discrimination claims in violation of Title VI, Title VII, Section 1983, Section 1981, Section 1985, the NYSHRL, and the Civil Rights Law.  (<u>See generally</u> Compl.)  On April 19, 2024, the fully briefed Dismissal Motion was filed.

<u>DISCUSSION</u>

I.   <u>Consideration of Dismissal Pursuant to Rule 8</u>

As an initial matter, Defendants seek dismissal of Plaintiff's Complaint for failure to comply with Rule 8, which requires a complaint contain "a short and plain statement of the claim."  FED. R. CIV. P. 8(a)(2).  Defendants contend Plaintiff's Complaint -- containing 63 pages, 331 paragraphs of allegations, and 204 pages of exhibits -- violates Rule 8.  (Support Memo at 16-17.)  Additionally, as Defendants point out, Plaintiff has already been put on notice of the Court's discretion to dismiss pleadings in violation of Rule 8.  (<u>Id.</u> at 16 (citing <u>Sachem Decision</u>).)  True; this Court has previously stated:

> Rule 8 requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED.

12

R. CIV. P. 8(a)(2). This Rule's purpose "is to provide an adverse party with notice of the claims asserted and to limit the burden imposed on both courts and litigants by unnecessarily verbose and incoherent pleadings." Barreto v. Suffolk County, No. 10-CV-0028, 2010 WL 301949, at *3-4 (E.D.N.Y. Jan. 20, 2010) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). Further, Rule 8(d)(1) requires that each allegation be "simple, concise, and direct." FED R. CIV. P. 8(d)(1). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S at 545. "[P]rolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit." Ceparano v. Suffolk County, No. 10-CV-2030, 2010 WL 5437212, at *3 (S.D.N.Y. Dec. 15, 2010) (citing Jones v. National Commc'ns & Surveillance Networks, 266 F. App'x 31, 32 (2d Cir. 2008) (affirming dismissal of pro se litigant's complaint for failing to comply with Rule 8's requirement of providing "short and plain statement of the claim[s]" where 58-page, single-spaced compliant, with 87 additional pages of attachments, alleged more than 20 separate causes of action against more than 40 defendants)). "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial[.]" Celli v. Cole, 699 F. App'x 88, 89 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted).

Sachem Decision, 2024 WL 3328637, at *5 (finding Plaintiff's complaint "unnecessarily lengthy and redundant" but nevertheless declining to dismiss on Rule 8 grounds).

    Like Plaintiff's complaint in the Sachem Case, the Court finds the instant Complaint "unnecessarily lengthy and redundant,"

13

containing 331 paragraphs of purported allegations replete with conclusory and argumentative statements cloaked as alleged facts, often unrelated to Plaintiff's claims, including discussions of "definitions" and articles outside the realm of Plaintiff's legal claims. As Defendants contend, Plaintiff's claims for the alleged unlawful failure to hire him for the Elementary Principal position "could have been pleaded in a much less voluminous, plainer, and less burdensome manner." (See Support Memo at 17.) However, cognizant Plaintiff is proceeding pro se and that his Complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson, 551 U.S. at 94, in its discretion, the Court declines to dismiss the Complaint on Rule 8 grounds. However, **PLAINTIFF IS PLACED ON EXPLICIT NOTICE**: Any future filings against Defendant in this action will be dismissed sua sponte if Plaintiff fails to comply with Rule 8.[7]

---

[7] Notably, in their Reply papers, Defendants contend Plaintiff's Opposition papers should be stricken as they fail to comply with the Individual Rules of this Court. (See Reply at 5 (citing prior version of relevant Individual Rules; see also J. Seybert Ind. Rule III.E(1), available at https://www.nyed.uscourts.gov/pub/rules/JS-MLR.pdf. (stating "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to twenty-five (25) pages" and "[a]ll memoranda must contain an index of cases; all memoranda of ten (10) or more pages shall also contain a table of contents").) Plaintiff's Opposition is 43 pages and includes neither a table of contents nor a table of authorities; therefore, it is in violation of this Court's Individual Rules. Though "[s]trict compliance with . . . this Court's Individual Rules is required," (J. Seybert Ind. Rule III.B.(1)), in light of

II.  Legal Standard Applicable to Rule 12(b) Dismissal Motions

Rule 12(b)(6) provides that dismissal is appropriate if the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint," Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67,

---

Plaintiff's pro se status and in its discretion, the Court will consider Plaintiff's Opposition to the instant Dismissal Motion.

71 (2d Cir. 1998), but this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (observing a document is "integral" if the complaint "relies heavily upon its terms and effect").

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure.  See Hiller v. Farmington Police Dep't, No. 12-CV-1139, 2015 WL 4619624, at *7 (D. Conn. July 31, 2015).

III. Dismissal of Complaint Pursuant to Rule 12(b)(6)

Plaintiff brings eight causes of action, alleging claims of race discrimination, conspiracy, and retaliation by Defendants. Generously construed, his claims are brought pursuant to Title VI, Title VII, Sections 1981, 1983, and 1985, as well as pursuant to New York State law.  The Court addresses each, in turn.

16

A.    Plaintiff's Title VII Claims Are Untimely

In New York, to pursue a claim under Title VII, a plaintiff typically has 300-days after the alleged discriminatory act to file a charge with either the EEOC or the NYSDHR. See 42 U.S.C. § 2000e-5(e); Harris v. City of N.Y., 186 F.3d 243, 248 n.2 (2d Cir. 1999). Further, to pursue a Title VII claim in federal court, a plaintiff must file his federal complaint within 90 days of receipt of his EEOC right-to-sue notice. See 42 U.S.C. § 2000e-5(f)(1); Dawes v. City Univ. of N.Y., 193 F. App'x. 59, 60 (2d Cir. 2006) (citing Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994)).

Here, Defendants argue, and Plaintiff concedes, the Title VII claims are untimely. (See Support Memo at 22-23; Opp'n. at 27.) Plaintiff filed his NYSDHR complaint, which was cross-filed with the EEOC, on November 29, 2020. (See NYSDHR Compl., Ex. C, attached to Compl.) The EEOC issued a dismissal and right-to-sue letter on November 22, 2021. (See Defs. Ex. 8.) Plaintiff did not commence the instant litigation until September 1, 2023, i.e., well beyond 90 days following the EEOC issuing its right-to-sue notice. (See Opp'n. at 27 ("Plaintiff concedes that Title VII claims were not plead within 90 days of receipt of the

right-to-sue letter.).)    Accordingly, as they are untimely,

Plaintiff's Title VII claims are DISMISSED with prejudice.[8]

    B.   <u>Plaintiff Fails to Allege a Title VI Claim</u>[9]

       Admittedly, Plaintiff's Complaint fails to plead a cause

of action pursuant to Title VI, but Plaintiff attempts to raise

such allegations in opposition to the instant Dismissal Motion.

(<u>See</u> Opp'n. at 27 ("The Plaintiff concedes that Title VI claims

were not plead formally in the form of a cause of action but does

not rescind the plea for relief.").)    Generally, allegations cannot

be raised for the first time in opposition to a motion to dismiss.

<u>See, e.g.</u>, <u>Guo v. IBM 401(k) Plus Plan</u>, 95 F. Supp. 3d 512, 526

(S.D.N.Y. 2015) ("A complaint cannot be amended merely by raising

new facts and theories in [a plaintiff's] opposition papers."

(quoting <u>Southwick Clothing LLC v. GFT (USA) Corp.</u>, No.

99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004)); <u>Ace</u>

---

[8]  To the extent Plaintiff intended to assert Title VII claims
against the individual Defendants, aside from being untimely,
"[i]ndividuals are also not liable in either their individual or
official capacities under Title VII."  <u>Milione v. City Univ. of
N.Y.</u>, 950 F. Supp. 2d 704, 709 (S.D.N.Y. 2013), <u>aff'd</u>, 567 F. App'x
38 (2d Cir. 2014).  Accordingly, any Title VII claims asserted
against the individual Defendants are implausible and are
therefore dismissed.

[9]  Like his Title VII claims, Plaintiff's Title VI claims cannot
be asserted against the individual Defendants because "there is no
individual liability available under Title VI."  <u>Moore v. City of
N.Y.</u>, No. 15-CV-6600, 2017 WL 35450, at *15 n.8 (S.D.N.Y. Jan. 3,
2017); <u>see also</u> <u>Russell v. County of Nassau</u>, 696 F. Supp. 2d 213,
238 (E.D.N.Y. 2010) ("Title VI claims cannot be asserted against
an individual defendant because the individual is not the recipient
of federal funds.").

Arts, LLC v. Sony/ATV Music Pub., LLC, 56 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) ("[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). However, because of the liberal construction afforded to pro se papers, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion." Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013). Thus, in light of Plaintiff's pro se status, the Court will consider the allegations in Plaintiff's Opposition with respect to his Title VI claim.

Title VI prohibits "any program or activity receiving Federal financial assistance" from excluding or otherwise discriminating against any individual on the basis of race, color, or national origin. 42 U.S.C. § 2000d. "A violation of Title VI is demonstrated only by proof of intentional discrimination." Sulehria v. New York, No. 13-CV-6990, 2014 WL 4716084, at *5 (S.D.N.Y. Sep. 19, 2014) (citing Guardians Ass'n v. Civil Serv. Comm'n of the City of N.Y., 463 U.S. 582, 584 (1983). To state a claim for a Title VI violation, a plaintiff must allege: "(1) [the defendant] received federal financial assistance, (2) [the plaintiff] was an intended beneficiary of the program or activity receiving the assistance, and (3) [the defendant] discriminated against [the plaintiff] on the basis of race, color, or national origin in connection with that program or activity." Commodari v.

19

Long Island Univ., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000), aff'd, 62 F. App'x. 28 (2d Cir. 2003).  Thus, "a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment."  Ass'n Against Discrimination in Emp., Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981) (citations omitted).  "In short, plaintiff must allege a 'logical nexus' between a federally funded program or activity and the employment discrimination he allegedly suffered."  Commodari, 89 F. Supp. 2d at 378; see also Rosario-Olmedo v. Cmty. Sch. Bd. for Dist. 17, 756 F. Supp. 95, 96 (E.D.N.Y. 1991) ("As a threshold requirement for an action under these sections, the federal funds allegedly giving rise to the action must have the 'primary objective' of providing employment." (citation omitted)).  "Courts have dismissed complaints for failure to specify when funds were received, what they were used for, and whether their primary objective was to provide employment."  Rosario-Olmedo, 756 F. Supp. at 96 (citing cases).

Here, in his attempt to allege a Title VI violation, Plaintiff claims the federal relief funds received by the District from the Coronavirus Response and Relief Supplemental Appropriations ("CRRSA") Act were primarily used toward professional salaries from March 13, 2020 through September 30, 2023.  (See Opp'n at 27; see also "2020-2023 CRRSA Funding Overview, Presentation to Brentwood UFSD Board of Ed.", Pl. Ex. 6,

ECF No. 18-6, at p.12 (presenting pie chart indicating 67% of the CRRSA-ESSER 2 funds earmarked for "professional salaries"), attached to Moss Opp'n Aff., ECF No. 18.)  Plaintiff argues "some of these co-mingled dollars funded wholly or in part the salary of Rosamaria Cortese after she became principal on September 2, 2020." (Id.)

On its face, Plaintiff's assertion is conclusory and does not establish that the primary purpose of the federal funds received from the CRRSA Act was to provide employment or that Plaintiff was the intended beneficiary.  See, e.g., Commodari, 89 F. Supp. 2d at 378 (dismissing plaintiff's Title VI claim for lack of standing, finding the "intended beneficiaries of the [federally funded] program were the participating students, not the professors, such as [the plaintiff], who administered the program, i.e., the program was not 'aimed primarily at providing employment'" (citation omitted)); Moore v. City of N.Y., No. 15-CV-6600, 2017 WL 35450, at *11 (S.D.N.Y. Jan. 3, 2017) (finding allegations "upon information and belief," that City and Department of Corrections "receive federal financial assistance and funds . . . earmarked primarily for employment" failed to sufficiently plead "a primary objective of the Federal financial assistance is to provide employment"), report and recommendation adopted by, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); see also Bhanusali v. Orange Reg'l Med. Ctr., No. 10-CV-6694, 2012 WL

13059694, at *8 (S.D.N.Y. Jan. 20, 2012) (plaintiff did not plausibly alleged any "logical nexus between the use of federal funds and the practice toward which agency action [wa]s directed") (citing Reynolds v. Sch. Dist. No. 1, 69 F.3d 1523, 1532 (10th Cir. 1995) (fact teacher was paid with federal grant funds did not show providing employment, rather than funding school programs, was primary intention)). Here, Plaintiff's allegations fail to establish a "logical nexus between [the CRRSA Act] and the employment discrimination he allegedly suffered"; therefore, he fails to state a Title VI claim. See Commodari, 89 F. Supp. 2d at 378; Johnson v. County of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (finding Title VI "essentially requires a logical nexus between the use of federal funds and the practice toward which the action is directed").

Furthermore, as discussed infra, Plaintiff's Title VI claim fails for the additional reason that he fails to allege Defendants engaged in intentional discrimination against him because of his race. See 42 U.S.C. § 2000(d); see, e.g., Kajoshaj v. N.Y.C. Dep't of Educ., 543 F. App'x. 11, 13-15 (2d Cir. 2013) (affirming dismissal of Title VI claims on grounds that, although plaintiffs "repeatedly assert . . . defendants took [discriminatory] actions because of plaintiffs' [protected class], their complaint is devoid of factual allegations that would reasonably give rise to such an inference" because "[p]laintiffs

do not, for instance, assert that any defendant referenced their [protected characteristics], much less that they did so in a derogatory manner," and plaintiffs' "naked allegation that they were treated differently" from those outside their protected class "cannot demonstrate a plausible entitlement to Title VI relief") (internal quotations and citations omitted); Diaz v. City Univ. of N.Y., No. 15-CV-1319, 2015 WL 13746673, at *9 (S.D.N.Y. Nov. 16, 2015) ("Plaintiff simply fails to allege any specific facts that would support . . . a theory [that his alleged mistreatment was due to discriminatory animus], and his conclusory allegations of discrimination do not suffice to meet his pleading burden."), report and recommendation adopted, 2016 WL 958684 (Mar. 8, 2016); Sulehria, 2014 WL 4716084, at *6 ("[Plaintiff's] allegations are merely restatements of the matters one must prove to state a discrimination claim; they do not plausibly state any facts that would tend to show discrimination."). As addressed below, Plaintiff's bald assertions and conclusory allegations are insufficient to "reasonably give rise" to an inference of discrimination. Accordingly, Plaintiff's Title VI claim must be DISMISSED.

C.    Plaintiff Fails to Plausibly Allege Section 1983 Claims

Plaintiff asserts Defendants violated his right to equal protection in failing to hire him for the Elementary Principal position because of his race. (Compl. ¶¶ 289-300.) In seeking

dismissal, Defendants contend collateral estoppel bars Plaintiff from pursuing a Section 1983 claim in this Court, and, in any event, the Complaint fails to state a claim under Rule 12(b)(6). (Support Memo at 24-29.)  For the reasons discussed below, the Court dismisses Plaintiff's Section 1983 claim.[10]

    1.   Threshold Issue:  Collateral Estoppel Does Not Preclude Consideration of the Section 1983 Claims

The doctrine of collateral estoppel prevents a party from re-litigating an issue of fact or law that has been decided in an earlier suit.  See Wilder v. Thomas, 854 F.2d 605, 616 (2d Cir. 1988), cert. denied, 489 U.S. 1053 (1989).  "Federal courts are required by 28 U.S.C. § 1738 to give effect to collateral estoppel rules of the state that rendered a prior judgment where the same issues are later raised in a federal proceeding."  Id. Under New York law, collateral estoppel applies only where there is an "identity of issue which has necessarily been decided in the prior action and is decisive of the present action," and where the

---

[10]  For the first time and without any explanation, in his Opposition, Plaintiff references an alleged due process violation by the District. (See Opp'n. at 35.)  Even if Plaintiff had raised a due process claim in his Complaint, which he did not, such claim would fail since there is no protected property right to employment.  See Abramson v. Pataki, 278 F.3d 93, 100 (2d Cir. 2002) ("Ordinarily, there is no constitutionally protected property interest in prospective government employment." (citations omitted)).  By extension, a job applicant has no property interest in the position for which he applies.  At bottom, because Plaintiff had no property interest in the Principal position, he cannot state a due process claim.

party against whom estoppel is sought had "a full and fair opportunity to contest the decision now said to be controlling." Schwartz v. Public Admin., 24 N.Y.2d 65, 71 (1969). "The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he . . . did not have a full and fair opportunity to litigate the issue." Jeter v. N.Y.C. Dep't of Educ., 549 F. Supp. 2d 295, 305 (E.D.N.Y. 2008).

Here, Plaintiff does not dispute there is an identity of issues between the NYSDHR Proceeding and the present action. Therefore, the Court need only determine whether the NYSDHR Proceeding afforded Plaintiff "a full and fair opportunity" to litigate his claims. In making this determination, the Court must examine "'whether the procedures used in the administrative proceeding assured that the information presented to the agency were sufficient both quantitatively and qualitatively, so as to permit confidence that the facts asserted were adequately tested, and that the issue was fully aired.'" Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 734 (2d Cir. 2001) (quoting Allied Chem. v. Niagara Mohawk Power Corp., 72 N.Y.2d 271, 276 (1988)).

In determining whether Plaintiff had a full and fair opportunity to litigate his claims in the NYSDHR Proceeding, the Court considers "the size of the claim, the forum of the prior

25

litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." Id. (quoting Schwartz, 24 N.Y.2d at 72); see also Jeter, 549 F. Supp. 2d at 305.  Notably, "[c]ourts in this Circuit that have declined to dismiss § 1983 claims in the employment discrimination context based on the asserted collateral estoppel effect of previous decisions from the [NYS]DHR have done so predominantly due to the plaintiff's pro se status before the [NYS]DHR as well as the absence of any record reflecting that discovery was conducted or that a hearing was held in that forum." Knox v. County of Ulster, No. 11-CV-0112, 2013 WL 286282, at *11 (N.D.N.Y. Jan. 24, 2013) (citing Finch v. New York, No. 10-CV-9691, 2012 WL 2866253, at *6-7 (S.D.N.Y. May 30, 2012)); see also Jeter, 549 F. Supp. 2d at 305; Lloyd v. N.Y. Botanical Garden, No. 03-CV-7557, 2004 WL 2093468, at *3-4 (S.D.N.Y. Sept.14, 2004).  "Consequently, those courts decided that, because the plaintiff did not have a full and fair opportunity to litigate the issues before the [NYS]DHR, collateral estoppel did not preclude adjudication of the § 1983 claims in federal court." Id. (refusing to apply collateral estoppel to Section 1983 claim where: plaintiff appeared before the NYSDHR pro se; no hearing or confrontation of opposing

26

witnesses took place; and the NYSDHR's determination was made on submitted papers).

So too, here, the Court finds collateral estoppel does not preclude the adjudication of Plaintiff's Section 1983 claims. In the context of the NYSDHR Proceeding, considering (1) Plaintiff's pro se status, and (2) there is no indication any (a) discovery was conducted, (b) any witnesses were interviewed, or (c) any type of hearing was held between the parties, said Proceeding was insufficient to "adequately test[]" or "fully air[]" the relevant issues; thus, Plaintiff is not precluded from subsequently bringing the same claims in federal court.[11]  See Kosakow, 274 F.3d at 734.  Accordingly, the Court concludes Plaintiff's Section 1983 claims are not precluded by the determination and dismissal in the NYSDHR Proceeding; therefore, it will consider the merits of Plaintiff's equal protection-based claims.[12]

---

[11]  Though the NYSDHR conducted a one-party conference with the Plaintiff (see NYSDHR's Final Investigation Report and Basis of Determination, ECF No. 16-8, at p.10), there is no suggestion Plaintiff had the opportunity to confront witnesses.  Further, demonstrably, Plaintiff asserts he failed to file a rebuttal to Defendants' NYSDHR Response as he "missed the email response from the [District]."  (Opp'n. at 5.)

[12]  To the extent Defendants contend the Commissioner's denial of Plaintiff's appeal challenging the District's failure to hire Plaintiff bars his federal claims (see Support Memo at 25), the Court disagrees for the same reasons.

2.   <u>Consideration of the Section 1983 Claim</u>

a.   <u>The Legal Standard</u>[13]

Section 1983 protects against the violation of federal rights, including the right to equal protection under the Fourteenth Amendment, by persons acting under color of state law. <u>See</u> <u>Littlejohn v. City of N.Y.</u>, 795 F.3d 297, 320 (2d Cir. 2015). To state a claim pursuant to Section 1983, a plaintiff must plausibly allege: (1) challenged conduct "committed by a person acting under color of state law"; and (2) said challenged conduct "must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." <u>Lansbury v. Massey</u>, No. 22-CV-6447, 2023 WL 266513, at *2 (E.D.N.Y. Jan. 18, 2023) (quoting <u>Cornejo v. Bell</u>, 592 F.3d 121, 127 (2d Cir. 2010)).  It is undisputed that "[a] state employee acting in his official capacity is acting 'under color of state law.'" <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal citation omitted).

---

[13]   To the extent Plaintiff brings his discrimination claims pursuant to Section 1981 (<u>see</u> Compl. ¶¶ 269-88), said claims are untenable as it is Section 1983 that "provides the sole cause of action available against state actors alleged to have violated [Section] 1981." <u>Duplan v. City of N.Y.</u>, 888 F.3d 612, 619 (2d Cir. 2018); <u>see also</u> <u>Richardson v. Buckheit</u>, No. 19-CV-8505, 2020 WL 5802291, at *4 (S.D.N.Y. Sept. 29, 2020) (dismissing Section 1981 claims against state actors).  Accordingly, the Court finds Plaintiff's Section 1981 claims are implausible; therefore, they are dismissed.

Plaintiff's Section 1983 claims of discriminatory failure to hire are analyzed under the well-established McDonnell Douglas burden-shifting framework. See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010). That standard provides: (1) a plaintiff must first establish a prima facie case of discrimination; after that, (2) the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if defendant does so, the McDonnell Douglas framework and its presumptions and burdens disappear; and, thus, (3) the burden shifts back to the plaintiff to show defendant's reason is pretextual, masking defendant's true discriminatory intent. See generally Patterson v. City of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). To establish a prima facie claim of race discrimination, a plaintiff must demonstrate: "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." Vivenzio, 611 F.3d at 106. Nonetheless, to survive a motion to dismiss, a plaintiff need not allege facts in the complaint sufficient to establish a prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002) ("In employment discrimination cases, a plaintiff is not required to establish a prima facie case at the pleadings stage."). Instead, the complaint should contain "only enough facts" to state a

29

plausible claim that also gives fair notice to the defendant of the basis for each claim.  See Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d at 210, 215 (S.D.N.Y. 2010) (holding that, in "[r]econciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, 'the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim'" (quoting Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 679 (S.D.N.Y. 2009))); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. Aug. 22, 2012), report and recommendation adopted by 2012 WL 4327396 (S.D.N.Y. Sept. 18, 2012).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a prima facie case."  King, 2012 WL 4122025, at *5 (collecting cases).

     The Second Circuit has held a plaintiff can meet the requisite pleading burden through "direct evidence of intent to discriminate, . . . or by indirectly showing circumstances giving rise to an inference of discrimination."  Vega, 801 F.3d at 87 (internal citation omitted).  A plaintiff may raise an inference of discrimination either "by meeting the requirements of McDonnell

Douglas and showing that the employer's stated reason for its employment action was pretext to cover-up discrimination, or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." Id. (citations omitted); see also Littlejohn, 795 F.3d at 311 (requiring facts "suggesting an inference of discriminatory motivation").

b.   Application

Plaintiff's Complaint attempts to create a "mosaic" of intentional discrimination by identifying "bits and pieces of evidence" giving rise to an inference of discrimination through theories of disparate treatment and disparate impact.   (See generally Compl.)   Defendants contend Plaintiff fails to allege facts providing "at least minimal support for the proposition that [Defendants] were motivated by discriminatory intent" in refusing to hire him for the Principal position.   (Support Memo at 26.) For the reasons discussed below, the Court agrees with Defendants.

i.   Disparate Treatment

More favorable treatment of similarly situated employees or candidates not in a plaintiff's protected group can give rise to an inference of discrimination.   See Littlejohn, 795 F.3d at 312.   A plaintiff must plausibly allege the existence of at least one comparator who was more favorably treated than plaintiff despite being "similarly situated to the plaintiff in all material

31

respects." Ruiz v. County of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted). "At the motion to dismiss stage . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).

      Plaintiff asserts an inference of race discrimination by disparate treatment is demonstrated by the fact that Ms. Cortese, a less qualified, non-African American applicant, who was similarly situated to Plaintiff, was appointed as Principal, while Plaintiff, a black, African American was not. (Compl. ¶¶ 92-96, 192-95.) Plaintiff maintains he was more qualified than Ms. Cortese for the Principal position because he had more administrative experience and, unlike Ms. Cortese, he had taught at the elementary school level. (See Compl. ¶¶ 292-95; Opp'n. at 6, 19.) Additionally, Plaintiff claims he possessed both the SAS and SBL certifications noted on the job posting; conversely, Ms. Cortese did not. (Compl. ¶¶ 92-95, 145, 171-72, 174; Opp'n at 30.) Plaintiff further contends dropping the certification and elementary teaching requirements during the application process demonstrates the District's intentional discrimination. (See Compl. ¶¶ 179, 181-86; Opp'n. at 30.)

Even assuming these allegations as true, Plaintiff and Ms. Cortese were not similarly situated in all material respects, i.e., unlike Ms. Cortese, who served as an Assistant Principal in the District for ten years, Plaintiff did not have experience as an Assistant Principal or Principal. (Compare Pl. Resume, with Cortese Resume.) Plaintiff alleges to have "served as an assistant principal in addition to other roles because over 90% of his position as Director of Academic Affairs is equivalent to that of an assistant principal." (Compl. ¶ 157.) The Court already rejected this exact contention advanced by Plaintiff in his prior discrimination case, the Sachem Case. See Sachem Decision, 2024 WL 3328637, at *8 ("Plaintiff's belief that his experience as Director of Academic Affairs is equivalent to that of an Assistant Principal is his subjective opinion; it does not support a discrimination claim."), aff'd, 2025 WL 946417 at *1 (affirming dismissal of discrimination claim where Plaintiff "did not have prior experience working as an assistant principal" and therefore "fail[ed] to plausibly allege that his comparators were 'similarly situated in all material respects'" (citing Littlejohn, 795 F.3d at 312 (quotation marks omitted))); see also Shands v. Lakeland Cent. Sch. Dist., No. 15-CV-4260, 2018 WL 3315738, at *13 (S.D.N.Y. July 5, 2018) ("Plaintiff's subjective disagreement with Defendants' assessment of her qualifications does not make their decision discriminatory.") (collecting cases), aff'd, 771 F. App'x

121 (2d Cir. 2019); Crews v. Trs. of Columbia Univ. in City of N.Y., 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006) ("Although [plaintiff] may disagree with [defendant's] determination that [another candidate] was more qualified than he, courts are not permitted to second-guess the reasonableness of the employer's criteria for employment or the merits of its selection for the position."). It likewise rejects Plaintiff's equivalence argument here for the same reason; it is Plaintiff's subjective opinion, which does not support his discrimination claim.

Further, Plaintiff offers no factual allegations suggesting Defendants' selection of Ms. Cortes for the Principal position instead of Plaintiff had any nexus whatsoever to Plaintiff's race. Rather, Plaintiff baldly alleges: "Hiring Ms. Cortese, a person who has 'never taught at the elementary level' while, reportedly, rejecting Mr. Moss for the same reasons even though he communicated in writing that he taught mathematics at the elementary level shows the Defendants' race and color bias." (Compl. ¶ 171.) Such "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." Soloviev v. Goldstein, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (citations omitted); see also Morales v. New York, 22 F. Supp. 3d 256, 275 (S.D.N.Y. 2014) ("Plaintiff's conclusory allegations of disparate

34

treatment and his personal opinion that such treatment was motivated by discriminatory intent are not enough to prevail on a § 1983 claim for a violation of the Equal Protection Clause.").

Plaintiff's allegations are based on nothing more than mere speculation. (See, e.g., Compl. ¶ 96 ("Denying [Plaintiff] his residency advantage while advancing non-Black/African American candidates is a form of color/race discrimination."); id. at ¶ 84 ("The fact that there are zero (0) Bilingual Education certified school principals demonstrates the [Defendants'] tendency and propensity (trend) to hire underqualified Whites/Caucasians at the expense of a healthy diversity of professional backgrounds to meet the needs of the student body."); id. at ¶ 242 ("The District inaccurately assessed the qualifications of the Plaintiff, a Black man, to his detriment.").) Wholly missing from Plaintiff's allegations is "the connective tissue that links h[is] protected status to the alleged failure to hire. [He] offers no allegations, save for h[is] own speculation . . . , that [Defendants] used that information in its hiring decisions —- much less that it was a motivating factor in their decision making." Scalercio-Isenberg v. Morgan Stanley Servs. Grp., Inc., No. 19-CV-6034, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019) (dismissing plaintiff's Title VII claim because her speculative allegations, i.e., her gender was used in defendant's hiring decision, were insufficient to link her protected status to defendant's alleged failure-to-

hire) (emphasis in original).  Further, "the possibility that 'the employer misjudged the qualifications of the applicants does not in itself expose him to [ ] liability.'"  Moss, 2025 WL 946417, at *1 (citing Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 259 (1981)).[14]

Moreover, contrary to Ms. Cortese, Plaintiff was not initially selected for an interview for the Principal position. In fact, Plaintiff was seemingly treated more favorably than other external candidates given that the Board of Ed. directed Plaintiff be interviewed after his application was initially rejected. (See NYSDHR Response at 64.)  Admittedly, Plaintiff's application does not suggest he had administrative experience at the elementary school level (see Compl. ¶ 62); nor does Plaintiff allege that the District selected other non-Black applicants without Assistant Principal, Principal or elementary school experience for interviews.  Additionally, Plaintiff's bald allegation that he was notified of his interview only one day prior, and therefore had limited time to prepare (Compl. ¶ 88), fails to show any relation to his race.  In fact, both Ms. Martinez, who is Hispanic, and Plaintiff were notified of their interviews after the other candidates.  (See NYSDHR Response at 64-65.)  Furthermore,

---

[14]  The Court notes the same standard applies to discrimination claims brought pursuant to Section 1983 and pursuant to Title VII. See Moss, 2025 WL 946417, at *2.

Plaintiff's allegation regarding the District cancelling the scheduled interviews of two Black applicants (Compl. ¶¶ 137-38), fails to demonstrate intentional discrimination. First, other black candidates interviewed for the Principal position; second, the District provided a legitimate non-discriminatory reason for canceling the interviews, which was to accommodate interviewing Plaintiff and Ms. Martinez. (NYSDHR Response at 64.)

Continuing, even if, as Plaintiff contends, Ms. Cortese was pre-selected for the Principal position, (Opp'n. at 31), pre-selection alone is not enough to raise an inference of discrimination. See During v. City Univ., No. 01-CV-9584, 2005 WL 2276875, at *7 (S.D.N.Y. Sept. 19, 2005) ("[E]ven if the Court were to credit Plaintiff's [pre-selection allegation], that fact does not give rise to an inference of discrimination without some evidence that that pre-selection was somehow discriminatory."). Plaintiff's conclusory assertion that Ms. Cortese was pre-selected fails to support an inference of intentional discrimination as his Complaint does not contain any factual allegations plausibly claiming the pre-selection was based upon Ms. Cortese's race.

Finally, in his effort to allege intentional discrimination, Plaintiff relies upon a statement made in the District's NYSDHR Response, i.e., "[a]s he so arrogantly does repeatedly, the Complainant self-servingly concludes that he is the most qualified and that no one else could ever be more

37

qualified than him." (Compl. ¶¶ 36, 121 (citing NYSDHR Response at p.69)(emphasis added).) Plaintiff likens the term "arrogant" to "a racial insult synonymous to 'uppity nigger'." (Compl. ¶¶ 119-36.) In fact, reminiscent of his complaint in the Sachem Case, Plaintiff's instant Complaint contains nearly 20 paragraphs of allegations regarding the use of the term "arrogant," including its dictionary meaning, as well as its use in various articles, to support his perception of the meaning of that word. (Compl. ¶¶ 36, 117-136.) However, as in the Sachem Case, here "the Court declines Plaintiff's implicit invitation to substitute 'uppity'-- which Plaintiff contends is a racially disparaging term--for the District's use of the word 'arrogant' in its NYSDHR Response." Sachem Decision, 2024 WL 3328637, at *9. As this Court has made clear, "Plaintiff's 'perception[]' of the meaning of ['arrogant' and 'uppity'] is not evidence of discrimination."[15] Id. (citing Brodt v. City of N.Y., 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (stating a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination")). In sum, Plaintiff's allegations are "missing the connective tissue

_____

[15] And, this Court further stated in the Sachem Decision: "As likely, the District's counsel was inartfully expressing its frustration with Plaintiff's history of litigation," but, at bottom, "there is nothing to impute this after-the-facts comment to the District, whose actions and inactions are the basis for Plaintiff's claims." Id.; (see also, e.g., NYSDHR Response at p.62 and n.1 (addressing Plaintiff's litigious behavior).)

that links h[is] protected status to the alleged failure to hire,"
see Scalercio-Isenberg, 2019 WL 6916099, at *5, and fails to
plausibly allege the existence of a similarly situated comparator
to support even a minimal inference of discriminatory intent.
Therefore, Plaintiff's prima facie discrimination claims based
upon disparate treatment fail.

ii.  Disparate Impact

Disparate impact claims "are concerned with whether
employment policies or practices that are neutral on their face
and were not intended to discriminate have nevertheless had a
disparate effect on [a] protected group." Reynolds v. Barrett,
685 F.3d 193, 201 (2d Cir. 2012) (quoting Robinson v. Metro-North
Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001)). However,
"equal protection claims under § 1983 cannot be based solely on
the disparate impact of a facially neutral policy." Id. "It is
well established that '[p]roof of racially discriminatory intent
or purpose is required' to show a violation of the Equal Protection
Clause." Id. (quoting City of Cuyahoga Falls v. Buckeye Cmty.
Hope Found., 538 U.S. 188, 194 (2003) (internal quotation
omitted)); see also Hayden v. Paterson, 594 F.3d 150, 162 (2d Cir.
2010); Johnson v. Wing, 178 F.3d 611, 615 (2d Cir. 1999) ("[A]
policy does not deny equal protection merely because it is known
to affect a particular class adversely.") A plaintiff pursuing "a
denial of equal protection under § 1983 must show that the

39

discrimination was intentional." Patterson, 375 F.3d at 226; Johnson v. County of Nassau, No. 10-CV-6061, 2014 WL 4700025, at *17 (E.D.N.Y. Sept. 22, 2014) (stating "whereas a plaintiff may pursue a disparate impact theory of liability under Title VII, he may not do so under Sections 1981 or 1983" (citation omitted)). Therefore, because Plaintiff fails to allege intentional discrimination, as addressed supra, he cannot proceed under a disparate impact theory of liability in his claim brought pursuant to Section 1983. Accordingly, finding Plaintiff's Complaint fails to plausibly allege a prima facie discrimination claim pursuant to Section 1983, Plaintiff's equal protection-based claim is DISMISSED pursuant to Rule 12(b)(6).

### iii. Plaintiff's Claims Against the Individual Defendants Fail

Here, where the Court has determined that, as a matter of law, no underlying Constitutional violation exists, Plaintiff's claims against the individual Defendants fail as a matter of law. Guity v. Uniondale Union Free Sch. Dist., No. 15-CV-5693, 2017 WL 9485647, at *28 (E.D.N.Y. Feb. 23, 2017), report and recommendation adopted, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017); see also J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist., 898 F. Supp. 2d 516, 553-54 (E.D.N.Y. 2012) ("Plaintiffs' claims against the individual defendants rely on the same underlying conduct and arguments as those made against the District Defendants . . . .

40

As plaintiffs have not proffered any additional evidence for these claims against the individual defendants nor have shown that such defendants caused plaintiffs to be deprived of a federal right . . . plaintiffs' claims against the individual defendants for violations of their constitutional rights fail as a matter of law."); Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("In order to establish individual liability under § 1983, a plaintiff must show . . . that the defendant caused the plaintiff to be deprived of a federal right."); Dunk v. Brower, No. 07-CV-7087, 2009 WL 650352, at *8 (S.D.N.Y. 2009) (observing the "Supreme Court has found that if there is no constitutional violation, there can be no liability, either on the part of the individual officer or the government body"); Adler v. S. Orangetown Cent. Sch. Dist., No. 05-CV-4835, 2008 WL 190585, at *13 (S.D.N.Y. Jan. 17, 2008) ("As Plaintiffs have not set forth a prima facie case of [] discrimination, their claims against the individual Defendants in their individual capacities must be dismissed."). Thus, as there is no underlying constitutional violation here, there is no basis to impose liability upon the individual Defendants.

In any event, Plaintiff also fails to adequately allege the requisite personal involvement of each individual Defendant in his Complaint. To state a claim for individual liability under Section 1983, "a plaintiff must demonstrate a defendant's personal

involvement in the alleged [constitutional violation]." Valenti
v. Massapequa Union Free Sch. Dist., No. 09-CV-0977, 2010 WL
475203, at *8 (E.D.N.Y. Feb. 5, 2010) (citation omitted) (emphasis
in original); see Kantrowitz v. Uniondale Union Free Sch. Dist.,
822 F. Supp. 2d 196, 218 (E.D.N.Y. 2011) (citing Ashcroft v. Iqbal,
556 U.S. 662 (2009) ("Because vicarious liability is inapplicable
to . . . § 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual actions,
has violated the Constitution.")); Gill v. Mooney, 824 F.2d 192,
196 (2d Cir. 1987) ("Absent some personal involvement by [a
defendant] in the allegedly unlawful conduct of his subordinates,
he cannot be held liable under section 1983." (internal citations
omitted)).  One is not liable for damages for constitutional
violations "merely because he held a high position of authority."
Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

     Further, a bald allegation that a defendant served as a
superintendent is insufficient to allege personal involvement;
instead, one needs to include plausible factual allegations
detailing the defendant's role in the alleged discrimination
against plaintiff.  See Edwards v. Jericho Union Free Sch. Dist.,
904 F. Supp. 2d 294, 309 (E.D.N.Y. 2012).  Similarly, merely
serving as a member on a committee that made an allegedly
discriminatory hiring decision does not render a board member
personally responsible or liable for that decision; again, to

survive a dismissal motion, a plaintiff must plausibly allege facts regarding the personal actions of each board member. See, e.g., Harry v. McDonald, No. 3:21-CV-1355, 2022 WL 3576676, at *4 (D. Conn. Aug. 19, 2022) (dismissing Section 1983 action where complaint failed to plausibly allege personal involvement; instead, allegations merely stated defendant was member of commission that made allegedly discriminatory hiring decision).

    Here, Plaintiff fails to allege personal involvement in the purported discrimination of which he complains by any of the individual Defendants. First, as to Superintendent Loeschner: He was not part of the initial interview committee involved in Plaintiff's non-selection. Rather, it was Superintendent Loeschner who, in the first instance, directed Plaintiff be interviewed for the Principal position. (See Loeschner Aff. at p.123.) The only Superintendent Loeschner-related allegations in the Complaint are that he publicly called Plaintiff "arrogant" (Compl. ¶¶ 117-18), which Plaintiff argues "depictct[s] the Plaintiff as an uppity nigger". (Opp'n. at 39). As discussed supra, without more, the "arrogant" remark is wholly insufficient to plausibly allege Superintendent Loeschner acted with racial animus.

    Second, as to Assistant Superintendent Palmer: Though she was on the initial interview committee that failed to recommend Plaintiff be advanced to the second-round of interviews, this fact

43

alone is insufficient. See McDonald, 2022 WL 3576676, at *4. Plaintiff additionally alleges that Assistant Superintendent Palmer "had an admitted prejudicial bias against [him] prior to his interview" (Compl. ¶ 199), seemingly based upon the fact she was a named as a defendant in another case brought by Plaintiff. (Id. ¶ 308.) Plaintiff's bare assertion is insufficient. See Kantrowitz, 822 F. Supp. 2d at 218 ("[M]ere bald assertions and conclusions of law do not suffice." (citing Davis v. County of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005)) (citation and internal quotation marks omitted). Wholly lacking from the Complaint are any factual allegations demonstrating any race-based decisions made by Assistant Superintendent Palmer.

Finally, as to Ms. Cortese: Plaintiff argues Ms. Cortese "purposefully utliz[ed] any privilege including white privilege and Internal Candidate privilege to gain access to and ultimately gain a principal position [which] is wrong and shows Ms. Corteses' liability in the matter." (Opp'n. at 36.) Defendants are correct that such allegations are "baseless" (see Reply at 14); simply applying for a promotional position, and ultimately being hired for that position, over another candidate who happens to be African American, without more, fails to demonstrate race discrimination.

Thus, as Plaintiff fails to allege a causal connection between any of the individual Defendants actions and the alleged

44

race discrimination, his claims against the individual Defendants fail as a matter of law.

### iv. Plaintiff's Municipal Liability and Official Capacity Claims Fail as a Matter of Law

It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  To establish a Section 1983 claim against a municipal defendant, a plaintiff must demonstrate that he has been deprived of a constitutional right as the result of an official custom or policy.  See Giaccio v. City of N.Y., 308 F. App'x 470, 471 (2d Cir. 2009); see also Monell, 436 U.S. at 692 (instructing Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights"); Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 257 (2d Cir. 2020) ("To establish liability under Monell, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (citation omitted)).

Plaintiff asserts municipal liability claims against the District and the Board of Ed.  (Compl. ¶¶ 289-300.)  However, since it has found Plaintiff fails to allege any constitutional violations, the Court need not engage in an analysis concerning whether alleged constitutional violations arose out of a

45

governmental custom, policy or practice. See Sachem Decision, 2024 WL 3328637, at *15 (citing Bennett v. Dutchess County, 832 F. App'x 58, 61 (2d Cir. 2020) ("[W]ithout an underlying constitutional violation, [the plaintiff's] Monell claim . . . likewise fails.") (citing Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)); further citing Hirsch v. New York, 751 F. App'x 111, 116 (2d Cir. 2018) ("Because the district court properly found no underlying constitutional violation, its decision to not address the municipal defendants' liability under Monell was entirely correct."). Thus, Plaintiff's claim for municipal liability is futile.

Similarly, Plaintiff's claims against the Defendants in their official capacities are futile. See Ward v. City of N.Y., No. 08-CV-7380, 2010 WL 3629536, at *3 (S.D.N.Y. Sept. 17, 2010) ("When an official is sued in his or her official capacity, however, a court is to treat that claim as it would treat a claim against the municipality itself." (quoting Adler, 2008 WL 190585, at *12 (finding "Plaintiff's inability to allege a § 1983 case against the District and the Board requires the dismissal of the claims against the individual Defendants in their official capacities")).

Accordingly, Plaintiff's municipal liability claim as well as his claims against the individual Defendants in their official capacity are DISMISSED.

D.    Plaintiff Fails to Plausibly Allege a Conspiracy Claim

To state a cause of action under Section 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); see also Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586–87 (2d Cir. 1988); Sachem Decision, 2024 WL 3328637, at *13. "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Thomas, 165 F.3d at 146 (citations and internal quotation marks omitted); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007) (same). "In other words, 'the intended victims must be victims not because of any personal malice the conspirators have toward them, but because of their membership in or affiliation with a particular class.'" Sachem Decision, 2024 WL 3328637, at *13 (quoting United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 850 (1983)).

As addressed supra, Plaintiff fails to plead a violation of any constitutional right, therefore, his claim for conspiracy

47

must be dismissed. See Sachem Decision, 2024 WL 3328637, at *13 (finding, where "Plaintiff fail[ed] to plead a violation of any constitutional right, . . . his claim for conspiracy must be dismissed") (citing Hartley v. Nassau Health Care Corp., No. 10-CV-3884, 2013 WL 3364375, at *8 (E.D.N.Y. July 3, 2013) ("Plaintiff has failed to allege the violation of any constitutional right, and therefore her section 1985(3) [claim] must be dismissed"); further citing Nasca v. County of Suffolk, No. 05-CV-1717, 2008 WL 53247, at *8 n.8 (E.D.N.Y. Jan. 2, 2008) ("Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section 1983 violation.") (collecting cases)).

Even if Plaintiff had alleged the violation of a constitutional right, his conspiracy claim fails for the additional reason that he fails to allege any plausible facts suggesting Defendants entered into an unlawful agreement to deprive Plaintiff of his constitutional rights. See id. (finding Plaintiff's operative complaint "contain[ed] no plausible facts suggesting [d]efendants entered into an unlawful agreement to deprive Plaintiff of his constitutional rights" and "conclusory and vague allegations are insufficient to allege [the requisite] 'meeting of the minds'" thereby requiring dismissal of conspiracy claim); see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) ("In order to maintain an action under Section 1985, a plaintiff must provide some factual basis supporting a meeting of the minds,

48

such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.") (citation omitted). Rather, Plaintiff baldly alleges: "All Defendants worked together to suppress the Plaintiff's paper qualifications through a lack of real interest in and lack of real consideration of his application." (Compl. ¶ 314.) He further claims, "[a]ll of the Defendants gave passive consent to a process that glaringly excluded members of the Black race and color classes," which "is a form of conspiracy to discriminate." (Id. ¶¶ 323-24.) Such conclusory and vague allegations are insufficient to allege a "meeting of the minds." Webb, 340 F.3d at 111;[16] see also Sanders v. Sheppard, No. 16-CV-6526, 2019 WL 13405420, at *7 (E.D.N.Y. Sept. 30, 2019) ("The bare allegation that defendants 'coordinated' or 'all were aware' is simply another variation of the conclusion that there was a conspiracy; [plaintiff] alleges no actual facts suggesting that a meeting of the minds occurred." (citing Springs v. City of N.Y., No. 17-CV-0451, 2019 WL 1429567, at *7 (S.D.N.Y. Mar. 29, 2019))). So too, Plaintiff's allegation that Superintendent Loeschner and Assistant Superintendent Palmer "acted together in setting up the interviews" (Compl. ¶ 325), fails

---

[16]    Notably, in his Opposition, Plaintiff acknowledges the deficiencies of his conspiracy allegations as he "now sees that his pleading may be deficient of substantive allegations", and implicitly requests leave to amend his Complaint. (Opp'n at 26-27.)

49

to state a plausible conspiracy claim.  Wholly lacking from the Complaint are any "specific factual allegations" that Defendants entered into an unlawful agreement.  See Guity, 2017 WL 9485647, at *27 ("[T]o properly allege a conspiracy claim, the complaint must contain specific factual allegations.").  "Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed."  Alston v. Sebelius, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (quoting Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir. 2010) (internal quotation marks and citation omitted).

Furthermore, as Defendants contend, Plaintiff's conspiracy claim fails for the additional reason that it is barred under the intra-corporate conspiracy doctrine.[17]  The intra-corporate conspiracy doctrine prohibits a conspiracy claim against employees of the same entity acting within the scope of their employment, because they are considered a single entity and, therefore, are legally incapable of conspiring with each other.

---

[17]  Plaintiff failed to respond to Defendants' argument that his conspiracy claim is barred by the intra-corporate conspiracy doctrine.  (See Support Memo at 20; Reply at 10.)  Such failure, by itself, is enough for the Court to dismiss his conspiracy claim. See Palmer v. City of N.Y., 564 F. Supp. 3d 221, 238 (E.D.N.Y. 2021) ("A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in opposition papers the defendant's arguments for dismissal." (collecting cases)); Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 405 (E.D.N.Y. 2018) (same) (collecting cases).

See <u>Sachem Decision</u>, 2024 WL 3328637, at *14 (citing <u>Varricchio v. County of Nassau</u>, 702 F. Supp. 2d 40, 62 (E.D.N.Y.2010), and <u>Guity</u>, 2017 WL 9485647, at *28 (stating "where all alleged co-conspirators are employed by the same municipal entity, the intra-corporate conspiracy doctrine precludes a conspiracy claim" and recommending plaintiff's conspiracy claim brought against board of education, district superintendent, district assistant superintendent, and district high school principal be barred by intra-corporate conspiracy doctrine)).  "The only exception to the application of this doctrine is where the 'plaintiff adequately alleges that <u>each</u> defendant possessed an independent, personal conspiratorial purpose, wholly separate and apart from the entity.'"  <u>Id.</u> (quoting <u>Broich v. Inc. Vill. of Southampton</u>, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009); emphasis added in <u>Sachem Decision</u>).

In the instant action, the individual Defendants involved in the Principal position interview process were employees of a single municipal entity.  Further, "there are no allegations any of these individuals were acting as separate and distinct entities in carrying out a purported conspiracy to discriminate against Plaintiff."[18]  <u>Sachem Decision</u>, 2024 WL 3328637, at *14 (citing <u>Guity</u> 2017 WL 9485647, at *28 (finding

_____

[18] The Court notes that during the interview process, Ms. Cortese was already an employee of the District as the then-Assistant Principal at Northeast Elementary.  (<u>See</u> Cortese Resume).

intra-corporate conspiracy doctrine required dismissal of plaintiff's conspiracy claim where "plaintiff d[id] not allege that the Village Board trustees, mayor, former and current chief of police, or any other Village entity, were effectively acting as separate entities in carrying out the alleged conspiracy to terminate plaintiff's employment" (citing Broich, 650 F. Supp. 2d at 247)); K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013) ("Plaintiffs' conspiracy claims also fail because the alleged conspirators are members of the same public entity, i.e., the [School District]."). "Therefore, because the individual Defendants were all members of the same public entity and there are no allegations these Defendants were effectively acting as separate entities in carrying out the alleged conspiracy of preventing Plaintiff from being [selected] for the Principal [p]osition, Plaintiff fails to allege a viable Section 1985(3) conspiracy claim." Id.

For all these reasons, Plaintiff fails to allege a viable conspiracy claim. Accordingly, Plaintiff's Section 1985(3) conspiracy claim is DISMISSED.

IV. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against the Defendants. See 28 U.S.C.

§ 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ."); Chris H. v. New York, 764 F. App'x 53, 56 (2d Cir. 2019) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims."); Gonzalez v. Victoria G's Pizzeria LLC, No. 19-CV-6996, 2022 WL 842666, at *3 (E.D.N.Y. Mar. 22, 2022) ("The Second Circuit has made the point that where dismissal of the federal claims occurs before trial the related state law claims should be dismissed as well." (quoting Fernandez v. Main Glatt Corp., No. 12-CV-0986, 2014 WL 1310287, at *4 (E.D.N.Y. Mar. 14, 2014))). Accordingly, Plaintiff's state law claims against the Defendants are DISMISSED WITHOUT PREJUDICE.

V.    Leave to Amend

In opposition to Defendants' Dismissal Motion, Plaintiff indirectly requests leave to amend the Complaint. (See Opp'n. at 27.) Defendants take the position that leave to amend should be denied as, inter alia, they "have already expended significant resources and time in attacking the deficiencies of and defending

against the claims in various forums and over many years [] arising out of this single hiring decision from 2020." (Reply at 14, n.3.)

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, leave to replead should be liberally granted to pro se litigants. See Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010); Harnage v. Torres, 665 F. App'x. 82, 84 (2d Cir. 2016) ("In this Circuit, pro se complaints should not be dismissed by the district court 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting Shomo v. City of N.Y., 579 F.3d 176, 183 (2d Cir. 2009))).

Here, given the striking similarity of this case to the Sachem Case, where this Court denied Plaintiff's implicit request to amend his Second Amended Complaint, the Court is hesitant to grant Plaintiff leave to amend, especially since Plaintiff has neither explicitly sought such relief nor provided the Court and Defendants with a proposed amended complaint so that each can understand the exact changes sought. See Sachem Decision, 2024 WL 3328637, at 16 (quoting Curry v. Campbell, No. 06-CV-2841, 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012)). Nonetheless and

reluctantly, considering Plaintiff is proceeding pro se and has not yet had the opportunity to amend his Complaint in this action, the Court GRANTS Plaintiff leave to file an Amended Complaint in accordance with the Federal Rules of Civil Procedure and the guidance set forth herein.  See also Moss, 2025 WL 946417 (2d Cir. Summary Order affirming Sachem Decision).

Plaintiff shall have 30 days from the date of this Memorandum and Order to file an Amended Complaint. **PLAINTIFF IS ON NOTICE:**  If a timely Amended Complaint is not filed, this case will be closed, with his operative Complaint being dismissed in accordance with the rulings made in this Memorandum and Order. Any Amended Complaint shall be clearly labeled "Amended Complaint" and shall bear the same Docket Number as this Order, "No. 23-CV-6571(JS)(SIL)".  Further, Plaintiff is cautioned that an Amended Complaint completely replaces the original Complaint. Thus, all claims and allegations Plaintiff wishes to pursue must be included in the Amended Complaint.

CONCLUSION

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Dismissal Motion (ECF No. 14) is **GRANTED** in accordance with this Order; all Federal Law Claims in the Complaint are **DISMISSED WITHOUT PREJUDICE with the exception of the Title VII claims, which are hereby DISMISSED WITH PREJUDICE.**

The Clerk of Court shall not enter Judgment until further ordered by the Court.

      **IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's State Law Claims; as such, the State Law Claims are **DISMISSED WITHOUT PREJUDICE.**

      **IT IS FURTHER ORDERED** that <u>Plaintiff shall have 30 days from the date of this Memorandum and Order to file an Amended Complaint</u>. **PLAINTIFF IS ON NOTICE:** <u>If a timely Amended Complaint is not filed, this case will be closed.</u> If Plaintiff chooses to file a timely Amended Complaint, he is to follow the guidance provided herein.

      **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to mail a copy of this Memorandum and Order to the <u>pro se</u> Plaintiff.

                            **SO ORDERED.**

                            /s/ JOANNA SEYBERT
                            Joanna Seybert, U.S.D.J.

Dated:     May 30, 2025
           Central Islip, New York